UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

           12-CR-64 (KAM)

     -against-

           NOTICE OF MOTION

YURI BERSHCHANSKY

          Defendant.
_____

      PLEASE TAKE NOTICE that upon the affirmation of Andrey Tikhomirov, Esq., attorney for the defendant, YURI BERSHCHANSKY, dated March 26, 2012 and upon the Indictment and all prior papers and proceedings had herein, the defendant will move this Court on a day and time to be fixed by the Court for the following relief:

1. MOTION TO QUASH SEARCH WARRANT PURSUANT TO RULE 12(a) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE;

2. MOTION FOR SUPPRESSION OF EVIDENCE PURSUANT TO RULE 41(h) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE;

3. MOTION FOR SUPPRESSION OF STATEMENTS PURSUANT TO RULE 12(b) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE;

And for such other and further relief as to this Honorable Court may seem just and proper.

DATED:    Brooklyn, New York
            March 26, 2012

                                        Respectfully submitted,

                                        Andrey Tikhomirov, Esq. (AT8276)
                                        1400 Avenue Z, Suite 505
                                        Brooklyn, NY 11235
                                        T: (718) 376-9500

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

            12-CR-64 (KAM)

      -against-

            AFFIRMATION
            IN SUPPORT

YURI BERSHCHANSKY

              Defendant.
_____

## BACKGROUND

   1. On January 24, 2011, based on an affidavit prepared by Special Agent (SA) Robert Raab a Search Warrant was signed by the United States Magistrate Judge, Honorable Joan M. Azrack, authorizing the search of the residence, computer and possessions of Mr. Bershchansky for evidence related the possession of child pornography. On January 31, 2011, the search warrant was executed. As a result of that search, several digital files containing child pornography, was found. On December 21, 2011, Mr. Bershchansky was arrested on the complaint charging him with possession, receipt and distribution of these files. Subsequently, an indictment was issued charging Mr. Bershchansky with possession of these files.

## STATEMENT OF FACTS

   2. The aforesaid Search Warrant was authorizing a search of the premises known and described as 1462 Gerritsen Avenue, Apt. #2, Brooklyn, NY 11229.

   3. The affidavit in support of the search warrant prepared by SA Raab relied entirely on information provided in a report by another unidentified agent, the "investigator", which in turn relied on information obtained using some unidentified investigative resources.

4. The affidavit purported to show the specific facts related to probable cause that evidence of a crime might be found at Mr. Bershchansky's residence.

5. According to SA Raab's affidavit, on November 23 and 24, 2010, the investigator directly connected to Mr. Bershchansky's computer trying to download certain files that appeared to be available for sharing. The investigator did not download these files directly from Mr. Bershchansky's computer.

6. Subsequently, the investigator downloaded certain files with allegedly identical digital signature from other multiple sources. These files contained child pornography.

7. On January 31, 2011, several law enforcement agents entered Mr. Bershchansky residence for execution of the Search Warrant related to the possession of child pornography.

8. During the search, the law enforcement agents interviewed Mr. Bershchansky.

9. Mr. Bershchansky mother, Ms. Marina Bershchanskaya was present in the premises during the law enforcement agents' entry, search and alleged interview of Mr. Bershchansky.

10. According to Ms. Bershchanskaya's affidavit, during the law enforcement agents' entry, search and alleged interview of Mr. Bershchansky, Mr. Bershchansky was in custody of the law enforcement agents and was not free to leave his residence.

11. Later, on December 21, 2011, during his arrest, Mr. Bershchansky confirmed some statements made during his interview on January 31, 2011.

12. During the arrest, Mr. Bershchansky was offered to sign certain documents titled STATEMENT OF RIGHTS, WAIVER OF RIGHT, and CONSENT TO SEARCH. Mr. Bershchansky signed the consent.

13. No document regarding any statement or waiver of rights, or consent to answer questions without an attorney present was offered to or signed by Mr. Bershchansky before or during January 31 interview.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. THE AFFIDAVIT DID NOT ESTABLISH PROBABLE CAUSE TO BELIEVE THAT CHILD PORNOGRAPHY WOULD BE FOUND AT MR. BERSHCHANSKY'S RESIDENCE

14. A defendant may move to quash and traverse a search warrant and to suppress the evidence obtained on the ground that the search and seizure was unreasonable because there was not probable cause for issuance of the warrant. *Illinois v. Gates*, 462 U.S. 213 (1983).

15. Probable cause sufficient to support a warrant exists where "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690 (1996).

16. "[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra v. Illinois*, 444 U.S. 85 (1991).

17. A description of the files containing child pornography downloaded from multiple sources other than Mr. Bershchansky's computer and identity of its' digital signatures with digital signatures found in Mr. Bershchansky's computer does not establish probable cause to believe that child pornography would be found in the residence.

18. Mr. Bershchansky's case is analogous to *United States v. Falso*, 544 F.3d 110 (2d Cir. 2008), a case in which the Second Circuit held that a warrant application to search an individual's home and computers for evidence of child pornography was deficient, because it only identified

him as a person who appeared to have gained access or attempted to gain access to a child pornography website, without any information that he had actually downloaded or possessed any child pornography.

19. As the *Falso* Court noted, "'It is an inferential fallacy of ancient standing to conclude that, because members of group A' (those who collect child pornography) 'are likely to be members of group B' (those attracted to children), 'then group B is entirely, or even largely composed of, members of group A.'" Quoting *United States v. Martin*, 426 F.3d 68, 82 (2d Cir. 2005).

20. Here, the investigator has already entered Mr. Bershchansky's computer through direct connection. No statements were provided by the investigator whether or not he actually downloaded any child pornography files from Mr. Bershchansky's computer. Even if the investigator found some indication of digital signature tracks of the files that were later found at other sources containing child pornography, any such indication without actual downloading or seeing the files in Mr. Bershchansky's computer, adds no weight to the inference that child pornography would be found on Mr. Bershchansky 's computer because the investigator has already been in his computer and could not find anything that he was looking for. (Warrant Affidavit, paragraphs 15-17.)

21. The SA Raab's affidavit was unlike those so often held to provide sufficient evidence to warrant a man of reasonable prudence in the belief that child pornography evidence would be found in a home. Unlike in *United States v. Ganoe*, 538 F.3d 1117 (9th Cir. 2008), no agent received child pornography from Mr. Bershchansky, via e-mail, or a file-sharing program, or otherwise. Unlike in *United States v. Gourde*, 440 F.3d 1065 (9th Cir. 2006), the affidavit here does not disclose evidence that Mr. Bershchansky belonged to a website containing child pornography. And unlike *United States v. Tucker*, 305 F.3d 1193 (10th Cir. 2002), no informant

told agents of seeing child pornography at Mr. Bershchansky's home. Reviewing courts in those cases found the affidavits sufficient because the inference that child pornography would be found at the places to be searched proceeded directly from information that child pornography had at some point originated from or been sent from those residences.

22. Furthermore, as with most warrants related to child pornography, it is mostly made up of "boilerplate" language about the general characteristics of people who produce, trade, distribute, or possess images of minors engaged in sexually explicit conduct. (Warrant Affidavit, paragraph 23.)

23. The affidavit obviously fails logical analysis, as a man of reasonable prudence does not need to conduct a manual search of the computer following the search conducted through direct connection to the same computer, or unless an assumption is made that only people who possessed child pornography have computers with digital signatures of files indirectly associated with child pornography. As pointed out by *Falso*, that assumption is fallacious.

24. It is understandable that the reviewing magistrate may have misunderstood this significant point. From the wording of the affidavit, disregarding misleading SA Raab's red herring comments of "file sharing" and "files offering for download", though it was not stated explicitly, it certainly appeared that the investigator did not find any files containing child pornography in Mr. Bershchansky computer. A careful reading of the affidavit proves it to be fatally lacking in probable cause. For a magistrate to have a substantial basis for concluding that an affidavit established probable cause, the facts must be sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued.

25. Wherefore, because the warrant was not supported by probable cause, Mr. Bershchansky respectfully requests that this Court quash the search warrant and suppress all evidence seized pursuant thereto.

## II. THE OMISSION OF NECESSARY STATEMENTS FROM THE AFFIDAVIT ENTITLES THE DEFENDANT TO A *FRANKS* HEARING

26. In *Franks v. Delaware*, 438 U.S. 154 (1978), the United States Supreme Court determined that a defendant who specifically alleges that a search warrant is based on an affidavit containing material misrepresentations or omissions is entitled to a hearing to present evidence in support of those allegations. In *United States v. Perdomo*, 800 F.2d 916 (9th Cir. 1986), the Ninth Circuit stated the following five requirements to determine whether a defendant is entitled to a hearing under *Franks*: (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; (5) the challenged statements must be necessary to find probable cause. (Quoting *United States v. Dicesare*, 765 F.2d 890 (9th Cir. 1985).

27. As stated in the statement of facts, *supra*, SA Raab omitted from the affidavit important information whether the investigator could download and actually had downloaded files containing child pornography allegedly offered for download by Mr. Bershchansky.

28. The affidavit contains a statement SA Raab relied on information provided by other agents either directly or in reports. However, Mr. Raab omits how the investigative resources described by SA Raab were connected to the files names known to be associated with child

pornography, as well as how such files were related to the IP address 24.185.53.197. (Warrant Affidavit, paragraphs 15.)

29. This omission must have been deliberate or reckless. The investigator's report on which ALL of the probable cause specifics was based has been never disclosed to the undersigned despite numerous specific discovery requests regarding production of such report. SA Raab was obviously in possession of the cited report containing the omitted information when he applied for the search warrant. He therefore must have known that the investigation results showed no actual presence of files containing child pornography in Mr. Bershchansky computer. It is inescapable that the omitted information should have been included, and therefore, the omission was at best reckless.

30. As stated *supra*, had the magistrate been given accurate information, we must conclude whether he would have reached the same decision.

31. Mr. Bershchansky is aware that a *Franks* hearing is usually held upon an allegation of a material omission from a search warrant and is certainly prepared should the Court desire a *Franks* hearing. However, the undersigned suggest that such a hearing may not be necessary given the posture of this case for two reasons. 1) The first ground set forth above is sufficient to traverse the warrant as the affidavit, on its face, fails to establish probable cause because of the failure of its logic; and, 2) the facts related to the material omission is contained in SA Raab's affidavit itself, and, absent some abrogation of those facts by the Government, there is nothing to be determined by the taking of evidence.

**III. MR. BERSHCHANSKY'S STATEMENTS SHOULD BE SUPPRESSED BECAUSE FEDERAL AGENTS PURPOSELY WITHHELD GIVING THE DEFENDANT HIS MIRANDA RIGHTS WHEN HE WAS INTERROGATED WHILE IN CUSTODY**

32. It is a well-established principle that alleged waivers of fundamental constitutional rights such as the right to counsel and the privilege against self-incrimination will be upheld only after careful inquiry into factual basis for the alleged waiver. *Johnson v. Zerbst*, 304 U.S. 458 (1938), overruled in part on other grounds by *Edwards v. Arizona*, 451 U.S. 477 (1981). "Waivers of such constitutional rights must not only be voluntary, but also must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742 (1970). The State bears the heavy burden of demonstrating that the accused had sufficient awareness of the consequences of the waiver, and that these vital constitutional rights were then knowingly and intelligently waived. *Miranda v. Arizona*, 384 U.S. 436 (1966).

33. Courts must presume that a defendant did not waive his rights. *United States v. Jackson*, 918 F.2d 236 (1st Cir. 1990). Thus, "a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." *Miranda*, 384 U.S. at 475. Moreover, it is clear that courts must "indulge in every reasonable presumption against waiver." *Brewer v. Williams*, 430 U.S. 387 (1977).

34. The test to determine whether a knowing and intelligent waiver was made rests on an inquiry into the totality of circumstances surrounding the interrogation. *Miranda*, 384 U.S. at 475-77. The question of waiver must be determined by looking to "the particular facts and circumstances surrounding the case." *Zerbst*, 304 U.S. at 464.

35. Whether a confession is voluntary is an issue independent of whether there was "formal compliance with the requirements of *Miranda*." The relinquishment of the rights established in *Miranda* "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412 (1986).

Also, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 421.

36. An accused is entitled to the reading of his or her *Miranda* rights only when he or she is interrogated while "in custody." *Thompson v. Keohane,* 516 U.S. 99 (1995). For an individual to be "in custody," there must be "a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *Thompson,* 516 U.S. at 112. In determining whether a suspect is "in custody" for purposes of applying the *Miranda* doctrine, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty,* 468 U.S. 420 (1984). The custody determination hinges upon whether, "given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson,* 516 U.S. at 112.

37. An involuntary confession is inadmissible at trial. *Withrow v. Williams*, 507 U.S. 680 (1993). The appropriate remedy for a violation of the defendant's sixth amendment rights is not only suppression of the statement made by the defendant, but also suppression of all the fruits of such statement. *United States v. Kimball,* 884 F.2d 1274 (9th Cir. 1989).

38. Here there is no question as to Mr. Bershchansky being "in custody" during the search of his residence on January 31, 2011. (Affidavit of Ms. Bershchanskaya, paragraphs 3-23.)

  a. Mr. Bershchansky did not voluntary open the door or let the federal agents into his residence.

  b. Mr. Bershchansky was woken up at 6 o'clock in the winter morning by federal agents' shouting and their flash-lights.

  c. Mr. Bershchansky was given orders to sit on his bed and keep his hands in certain position against his will.

    d. Mr. Bershchansky was surrounded by at least two federal agents from at all times during the search and questioning and at least 6-8 more officers present at his residence doing the search.

    e. Although Mr. Bershchansky was allowed to put his clothes on, the agents stayed in the same room observing Mr. Bershchansky.

    f. Mr. Bershchansky's interrogation occurred in earlier morning when it was still dark outside.

    g. Mr. Bershchansky did not voluntary initiated the conversation with the federal agents. Mr. Bershchansky's interrogation consisted of specific questions asked by at least two federal special agents.

    h. Mr. Bershchansky was escorted by two federal agents to the kitchen where he continued answering questions of the federal agents. During the escort one agent was holding Mr. Bershchansky hands behind his back and walked with him to the kitchen.

    i. Mr. Bershchansky appeared very intimidated by this environment during the interrogation.

39. Agent's verbal assurances that Mr. Bershchansky was free were contradicted by their conduct during the interrogation. Although his mother was allowed to leave the residence, Mr. Bershchansky's access to the entrance door was continuously blocked by the federal agents.

40. The surroundings where Mr. Bershchansky was questioned by at least two federal agents while several more agents were searching his residence subjected him to an "inherently coercive" environment. New York v. Quarles, 467 U.S. 649 (1984).

41. Under the circumstances, a reasonable person would not have felt free to terminate the interrogation or leave. This was a horrifying event for Mr. Bershchansky and at no point did he

ever feel free or safe. During the entire interrogation the Defendant feared for his freedom and was scared.

42. The totality of the above circumstances which occurred immediately prior and during the interrogation clear indicates that Mr. Bershchansky was "in custody" and he was entitled to a reading of his Miranda rights.

43. None of his rights has been read or given to read to Mr. Bershchansky prior to the interrogation. No waiver of the rights or consent to answer any questions without Mr. Bershchansky's attorney has been executed by Mr. Bershchansky at that time. The questioning of Mr. Bershchansky by the federal agents amounts to custodial interrogation triggering Mr. Bershchansky's rights under the Fifth Amendment of the United States Constitution. The false assurances of freedom and blatant refusal to read Mr. Bershchansky his Miranda rights prior to Mr. Bershchansky's interrogation is a violation of his Constitutional rights. The violations are the following:

  a. Mr. Bershchansky was not properly advised of Miranda rights prior to his making a statement.
  b. Mr. Bershchansky was not given the opportunity to confer with legal counsel.
  c. The defendant was not advised that he was a suspect in a criminal investigation.
  d. The defendant was not advised that he was under arrest or in custody before the statement was taken.
  e. The statements were made in response to police questioning.
  f. The statement was involuntarily made.
  g. The statement was otherwise obtained in violation of the defendant's rights under the Constitution of the United States.

44. Mr. Bershchansky's motion to suppress statements made to authorities should be granted on the grounds that the above-mentioned interrogators proceeded to question Mr. Bershchansky without first obtaining and knowing, voluntary, and intelligent waiver of his Miranda rights.

45. Because the court has not yet heard the evidence on the matter, the undersigned cannot now make his final argument on whether the government can satisfy its burden to show the statements may be admitted into evidence. Nevertheless, the statements would appear to be almost certainly inadmissible on the ground that Mr. Bershchansky was subjected to custodial questioning without reading his Miranda rights.

46. Wherefore, Mr. Bershchansky respectfully moves that this Honorable Court enter an order finding that his rights under the Fifth Amendment to the United States Constitution to be free from being a witness against himself have been violated as a result of the custodial interrogation by the federal agents on January 31, 2011, where Mr. Bershchansky did not make a knowing, intelligent, and voluntary waiver as required by law and therefore his statements are inadmissible and should be suppressed.

## **RELIEF**

47. Mr. Bershchansky respectfully reserves the right to make further and additional motions which may be necessitated by the Court's rulings on the relief sought herein or once additional discovery material or evidence has been received.

48. The specific requests contained in these motions are not meant to limit or preclude any future requests by Mr. Bershchansky for further relief from this Court as appropriate.

WHEREFORE, it is respectfully requested that the Court grant the applications sought herein and such other and further relief as to the Court may seem just and proper.

Dated: Brooklyn, NY
      March 30, 2012

                                        Respectfully submitted

                                        AT8276
                                        Andrey Tikhomirov, Esq.
                                        1400 Avenue Z, Suite 505
                                        Brooklyn, NY 11235
                                        T: (718)376-9500

Enclosures


cc:     Hon. Kiyo Matsumoto

        Kristin Mace

        Clerk of the Court