UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

                                                                                       12-CR-64 (KAM)

-against-

YURI BERSHCHANSKY

                        Defendant.
_____

## DEFENDANT'S BRIEF IN LIGHT OF THE 2nd CIRCUIT'S DECISION

                                                      Andrey Tikhomirov, Esq.
                                                      (AT8276)
                                                      1400 Avenue Z, Suite 505
                                                      Brooklyn, NY 11235

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| UNITED STATES OF AMERICA | 12-CR-64 (KAM) |
| -against- | DEFENDANT'S <u>BRIEF IN LIGHT OF THE 2nd CIR. DECISION</u> |
| YURI BERSHCHANSKY | |
| Defendant. | |

_____

PRELIMINARY STATEMENT

The defendant, Mr. Bershchansky, by his counsel, respectfully submits the brief following the Second Circuit's recent decision in *United States v. Voustianiouk*, No. 104420, 2012 WL 2849655 (2d Cir. July 12, 2012) which effects the defendant's Motion to Suppress Statements and Search Evidence.

This Brief refers to issues raised during the course of the litigation and the evidentiary hearing and how this Second Circuit's decision impacts on the specific questions relevant to the resolution of the instant motion.

Considering the fact findings and rulings made by the Second Circuit and the evidence offered during the course of this litigation, Mr. Bershchansky respectfully submits that the officials in this case conducted a warrantless search of his home in violation of the Fourth Amendment and they knowingly stepped beyond the bounds of the search that the magistrate judge had authorized them to conduct.

SUMMARY OF EVIDENCE

On November 23 and 24, 2010, an investigator, using certain Internet investigative resources, located a computer known to be associated with illegal activity. The computer was using a certain IP address. (See Affidavit in Support of Search Warrant, dated January 24, 2011, at P.13 ¶15).

The investigator traced the IP address to an Internet service provider, Cablevision, and filed a subpoena requesting the name and address of the customer whose account was associated with the IP address under investigation. In response, Cablevision advised that the subscriber to that IP address was the defendant, Yuri Bershchansky of 2462 Gerritsen Avenue Apartment 2, Brooklyn, New York 11239. (Id. at P.15 ¶19).

Prior to applying for a search warrant, Robert Raab, a federal agent involved with the investigation, visited the building at 2462 Gerritsen Avenue, Brooklyn, NY 11229, and "come previously to see the location." (See Transcript of Suppression Hearing, dated May 14, 2012, at 127:15-25).

In an affidavit submitted to the magistrate judge in support of the search warrant, agent Raab identified the place to be searched as an apartment located within a two-story red brick multi-family dwelling with the door bearing the number "2462 2". (See Affidavit *supra* at P.3 ¶4).

Agent Raab eventually obtained a search warrant authorizing agents to search "the premises known and described as 2462 Gerritsen Avenue, Apt. #2, Brooklyn, NY 11229." (See Search Warrant, Case # M11-063, dated January 24, 2011).

The warrant did not mention the name of the person who lived there and only authorized them to search that single apartment #2. (Id.)

On January 31, 2011, when the federal agents arrived to the location for search, they had the warrant and they knew that it was authorizing agents to search "the premises known and described as 2462 Gerritsen Avenue, Apt. #2. (Transcript *supra* at 116:20-23, 118:22-25 and 119:1).

At some time after the arriving to the location, agent Raab realized that the Internet subscriber he was investigating lived in the apartment #1, not apartment #2, but he "did not realized that it [the search warrant] should have read #1." (Id. at 119:2-4).

Agent Raab neither obtained a new search warrant to the apartment #1 nor called a magistrate judge to clarify the issue. The suspect happened to be home at the time. So the agents decided to search his apartment #1 instead of the apartment #2 described in the search warrant. (Id. at 87:6-11 and 146:11-19).

After the officials knocked the door of apartment #1, the defendant's mother opened the front door. At that point, agent Raab and the other officials explained to her that they have a search warrant for the residence and needed to come in. (Id. at 90:9-13).

Then the officials entered into the apartment #1. At the time, the defendant was sleeping in his bedroom. Upon their entry, the agents asked the defendant to get up. The agents did not say that they have a search warrant for the defendant.

Upon searching the apartment, officials discovered files containing illegal material on computers and hard drives. The defendant eventually admitted to the agents certain incriminating facts.

There is no indication that the officials explained how the search warrant in their possession did mention defendant's name or his residence, or that the warrant clearly made reference to the defendant's apartment.

ARGUMENT

**Unlawful Search of Defendant's Apartment**

The instant matter is practically identical to *Voustianiouk, supra.*

Similar to the *Voustianiouk*, in this case, the very same agent Raab also exceeded the authority that he had been granted by the magistrate judge and searched an apartment other than the one that the magistrate intended to authorize him to search.

Similar to the *Voustianiouk*, there was no indication that the magistrate judge who issued the search warrant was aware that the government even considered the apartment #1 a subject to search or knew what evidence the government had to support its suspicions.

Similar to the *Voustianiouk*, the alleged illegal activity occurred at the particular Internet IP address associated the particular physical address. Cablevision unequivocally confirmed that said IP address physically registered at the apartment #2 of the premises at issue, and Yury's name first came out as a subscriber for Cablevision Internet services at such physical address. Relying on Cablevision records, Raab believed that the IP address linked to illegal activity was associated with a computer located in the apartment #2, and he secured a warrant to search that particular apartment #2.

The reference to the same apartment #2 was presented to "an objective mind" of the magistrate judge who issued the warrant. Based on such reference to physical registration of IP address at issue the warrant was issued specifically for the apartment intended to be searched and not for the places other than the place intended by the magistrate.

Similar to the *Voustianiouk*, in this case, there is no indication that the magistrate judge who signed the warrant at issue intended for the scope of the search to cover any apartment in the

building other than the apartment #2. The search warrant and accompanying affidavit explicitly authorized the search of the apartment #2 and make no mention of the apartment #1.

Similar to the *Voustianiouk*, the affidavit submitted by agent Raab in support of his application for a search warrant would not have provided probable cause to search of the apartment #1, because the Cablevision information regarding the Internet subscriber's address at the apartment #2 did not provide any basis for concluding that there may have been some illegal material in the apartment #1.

Similar to the *Voustianiouk*, if Yury Bershchansky had not been home or his mother had not answered the front door on the morning of the search, the agents would have had to execute the warrant according to the magistrate judge's command and to enter and search the apartment #2.

Similar to the *Voustianiouk*, the warrant at issue did not inaccurately or incompletely describe the place that the magistrate judge had authorized the agents to search. If anything, the warrant was quite clear and specific. Additionally, the officers who executed the warrant were familiar with the apartment because they had come to see the location previously before the warrant was executed. They had visited the area and were familiar with the color of the entrance door specified in the warrant. Accordingly, there was no risk that the executing officers would use any other door or mistakenly enter the wrong apartment.

Similar to the *Voustianiouk*, the officials omitted Yury's name from the search warrant because the government did not want to foreclose the possibility that it could search the other apartments in the house even if it turned out that Yury did not in fact live there. For all the investigator knew, that Yury Bershchansky might have been a landlord who paid the Internet bill

6

on behalf of a tenant or that the current resident in that apartment had simply continued to pay for Internet service but had neglected to change the account subscriber's name.

Similar to the *Voustianiouk*, the magistrate judge who issued the search warrant in this case only intended to authorize, and thus did authorize, a search of the apartment #2 at 2462 Gerritsen Avenue, Brooklyn, NY 11229, and could not have validly authorized the search of the apartment #1 because the sworn affidavit submitted by Raab did not provide probable cause to search there.

Furthermore, it is noteworthy that in his affidavit in support of the application for a search warrant, agent Raab mentioned that he confirmed with the tenant living at 2462 Gerritsen Avenue Apartment #1 that Yury and his mother live in the apartment #2 and that the tenant gave him Yury's physical description. (See Affidavit in Support of Search Warrant, dated January 24, 2011, at P.16 ¶20).

Such statement is equivocal and inconsistent with the facts of the case. Agent Raab could not have confirmed anything with the tenant from the apartment #1, because no one, except Yury and his mother, lived in the apartment #1 at the time mentioned herein.

Moreover, it is remarkable that the real tenant of the apartment #2, Svetlana Klishina, remembers that, some time prior to the search at issue, two agents came to her apartment #2 and asked questions regarding the occupants of the house and the apartment #1 in particular. Unsurprisingly, however, no name "Yury" or his physical description has been ever mentioned or given to the agents. (See Affidavit of SVETLANA KLISHINA, dated August 08, 2012, annexed hereto as Exhibit A).

At this time, there is no need to inquire into whether such statement in Raab's affidavit was actually intended to mislead the magistrate judge or was it just an inadvertent typographical

error, because the apartment #1, obviously, was not the one intended by the magistrate judge to be searched and the search was conducted without her authorization. The Fourth Amendment does not permit to search one apartment simply because there is a warrant to search another that is nearby.

Therefore, on January 31, 2011, the officials conducted a warrantless search of Yury Bershchansky's apartment #1 in violation of the Fourth Amendment.

### The evidence of the search must be suppressed

Similar to the *Voustianiouk*, *supra,* an exclusionary rule is applicable in this case and the evidence seized as a result of the unconstitutional search must be suppressed.

Similar to the *Voustianiouk*, there can be no doubt that a search warrant for apartment #2 in this case did not permit agent Raab to enter apartment #1 or any apartments other than the one specified in the warrant. Agent Raab could not reasonably rely on the warrant in his possession - which on its face explicitly authorized the search of the apartment #2 - to conduct a search of the apartment #1.

Similar to the *Voustianiouk*, agent Raab was required to have a reasonable knowledge of what the law prohibits. At the suppression hearing, agent Raab stated that he knew that he came to search the apartment #1. He also knew, or should have known, that there were apartment #1 and apartment #2 in the building before he entered the apartment #1, and thus he would have been aware of the error in the warrant, or otherwise, he had been obligated to limit his search to the apartment #2 only.

Similar to the *Voustianiouk*, nothing in the warrant at issue provided any reason for the officers to conclude that the magistrate judge had authorized them to search the apartment #1.

The warrant did not make any reference to or even mentioned Yury Bershchansky as a suspect or the occupant of the apartment #2 that the officials were authorized to search.

Similar to the *Voustianiouk*, in this case, the officers did not stumble into the apartment #1 by accident. And they did not mistakenly find themselves in a part of the building that the warrant did not authorize them to search. Rather, agent Raab knowingly ventured beyond the clear confines of the warrant by walking into the apartment #1.

Similar to the *Voustianiouk*, the officials in this case, did not take every step that could reasonably be expected of them. When agent Raab discovered that morning that Yury Bershchansky lived in the apartment #1 instead of #2, he could have obtained a warrant to search Yury's apartment instead of deciding, without any judicial oversight, that the evidence in his possession provided probable cause to do so.

No jury could reasonably find that it was objectively reasonable for the officers to entry and conduct a search of the apartment #1 until the magistrate, informed of what the officers had learned on the scene prior to entry, explicitly authorized a search of this apartment.

Similar to the *Voustianiouk*, there is no question that the officers in this case could have called a magistrate judge on the telephone that very morning to obtain a new search warrant for the apartment #1. And a magistrate judge then would have issued a warrant based on information communicated by telephone or other reliable electronic means. And, obviously, Raab and the other officers involved could have obtained a new warrant to search the apartment #1 while they had Yury detained in his apartment and questioned him for the period of approximately one hour.

Similar to the *Voustianiouk*, as was the case here, no sort of exigency existed when agent Raab drafted the warrant application or when he conducted the search. Likewise, there was no

any danger and difficulty in executing the search warrant in issue. The officers had ample opportunity to detain their suspect and obtain a new warrant.

Similar to the *Voustianiouk*, the federal agents that very morning could have firmly, and perhaps even fervently, believed that they might find evidence of a crime in the apartment #1. However, the Fourth Amendment's general rule that the government first obtain a warrant before searching a person's home does not hinge on the strength of an officer's conviction that evidence of a crime will be uncovered.

"Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers." *Johnson v. United States*, 333 U.S. 10, 14 (1948). The exclusionary rule is designed "to deter police misconduct." *Davis v. United States*, 131 S. Ct. 2419, 2423 (2011); *United States v. Leon*, 468 U.S. 897, 916 (1984). Raab's conduct in this case "was sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009).

Therefore, under the *Voustianiouk*, and given the specific facts of this case, the evidence seized as a result of this unconstitutional search must be suppressed in order to deter officials' misconduct in these circumstances.

Dated: Brooklyn, NY
August 10, 2012

Respectfully submitted
Andrey Tikhomirov, Esq.
(AT8276)
1400 Avenue Z, Suite 505
Brooklyn, NY 11235
Tel: (718) 376-9500

CERTIFICATE OF SERVICE

I certify that on August 10, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

/s/ _____
Andrey Tikhomirov, Esq.
(AT8276)
Attorney for Defendant